# PECHMAN LAW GROUP PLLC
### ATTORNEYS AT LAW

488 MADISON AVENUE
NEW YORK, NEW YORK 10022
(212) 583-9500
WWW.PECHMANLAW.COM

March 28, 2018

**VIA ECF**

Hon. Barbara C. Moses
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *Vazquez et al. v. Sawa Restaurant Corp. d/b/a Miramar et al.*
             No. 17 Civ. 6129 (BCM)

Dear Judge Moses:

      This joint letter is submitted on behalf of Plaintiffs Alejandro Vazquez ("Vazquez"), Graciano Carrillo ("Carrillo"), and Leonidas Fernandez ("Fernandez"), (collectively, "Plaintiffs") and Defendants Sawa Restaurant Corp. d/b/a Miramar ("Miramar"), Adel Mostafa ("Mostafa"), and Salwa Eskandar ("Eskandar") (collectively, "Defendants") in the above-referenced matter. We submit this letter together with counsel for Defendants to seek approval of the enclosed Settlement Agreement codifying the terms the parties agreed to in settling this matter.

### PROCEDURAL HISTORY

      This case was filed on August 14, 2017, and an Amended Complaint was filed on September 29, 2017, asserting claims against Defendants to recover unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the New York Labor Law § 190, *et seq.* ("NYLL"). Plaintiffs also asserted claims for spread-of-hours pay, misappropriated gratuities, liquidated damages, interest, and attorneys' fees and costs under the NYLL, as well as statutory damages for Defendants' failure to provide them with wage notices or wage statements pursuant to the NYLL and the Wage Theft Prevention Act ("WTPA").

      The parties exchanged paper discovery and also participated in a settlement conference before Your Honor. On January 30, 2018, with the Court's aid, the parties reached a settlement for $12,500 to resolve the claims arising out of the Amended Complaint, as well as a $10,000 penalty payment contingent upon Defendants' failure to cease operations of the restaurant by February 28, 2018. Miramar remained open

after February 28, 2018 and continues its operations. Pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), counsel for the parties submit this letter with an executed Settlement Agreement for the Court's approval and a proposed order dismissing this case. Also enclosed are Plaintiffs' counsel's billing records.

## FACTUAL ALLEGATIONS

Miramar is a Mediterranean restaurant located in Lower Manhattan. Vazquez worked for Miramar as a food preparer and dishwasher; Carrillo worked as a server; and Fernandez worked as a server. Plaintiffs brought this case on behalf of themselves and all similarly situated non-exempt workers of Miramar, including current and former servers, bartenders, cooks, runners, and dishwashers.

According to the Amended Complaint, Plaintiffs allege that Defendants (1) imposed an unlawful tip pool requiring tipped employees to share customer tips with manager; (2) required tipped employees to spend at least 20% of their shifts performing non-tipped work unrelated to their duties as tipped workers; (3) did not provide tipped employees with notice of the tip credit provisions of the FLSA and the NYLL; (4) failed to pay overtime pay of time and one-half their regular rate of pay for hours worked over forty in a workweek; (5) failed to pay spread of hours pay; (6) failed to pay for all hours worked; (7) failed to provide wage notices upon hire or when pay rates changed; and (8) failed to furnish accurate wage statements with wages.

In their Answer to the Amended Complaint, Defendants denied the substantive factual allegations, arguing that Plaintiffs worked fewer hours than they purported, that all hours worked were paid, that proper overtime was paid, as was spread of hours (when applicable), and that Defendants had provided wage statements and notices as required by the NYLL. In support of their defenses, Defendants produced weekly handwritten work schedules containing Plaintiffs' signatures. Throughout discovery and during the January 30, 2018 settlement conference, Defendants demonstrated an inability to pay by producing documents relating to foreclosure proceedings on Mostafa and Eskandar's personal residence, as well as Miramar revenue reports showing the restaurant operating at a net loss due to low sales and high rent.

## THE SETTLEMENT AGREEMENT IS FAIR AND REASONABLE

To determine whether an FLSA Settlement Agreement should be approved as fair and reasonable, courts in the Second Circuit consider the totality of the circumstances, including the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

Hon. Barbara C. Moses
March 28, 2018
Page 3 of 5

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations omitted).

"Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Martinez v. Hilton Hotels Corp.*, No. 10 Civ. 7688 (JLC), 2013 WL 4427917, at *2 (S.D.N.Y. Aug. 20, 2013) (quoting *Garcia v. Bae Cleaners Inc.*, No. 10 Civ. 7804 (KBF), 2012 WL 1267844, at *1 (S.D.N.Y. Apr. 12, 2012)).

Due to their precarious financial situation, Defendants agreed to pay Plaintiffs $12,500 (the "Settlement Sum") to resolve the claims raised in this Action, and a separate $10,000 penalty payment (the "Penalty Payment"), if Miramar remained in operation after the agreed-upon closing date of February 28, 2018. Notably, Plaintiffs' counsel will not take a portion of the Settlement Sum, and the Plaintiffs will divide the Settlement Sum proportional to their respective lengths of employment and unpaid wages. Plaintiffs' counsel will receive one third of the Penalty Payment totaling $3,333.33, and the Plaintiffs will divide the remainder of the Penalty Payment proportionally.

The parties also agreed that in the event Miramar is sold or the lease for the property on which Miramar is located is sold or transferred, Plaintiffs shall receive either: (1) One-Third (1/3) of the Gross Amount of the sale if the sale or transfer of Miramar and/or the lease of Miramar property is for $50,000.00 or less; or (2) One-Third (1/3) of the Gross Amount of the sale up to $50,000.00, and One Quarter (1/4) of the Gross Amount of the sale for the amount of the sale greater than $50,000.00 if the sale or transfer of Miramar and/or the lease of Miramar property is for more than $50,000.00.

At the settlement conference held before Your Honor, the parties explored the strengths and weaknesses of the case, including Defendants' poor financial position. Defendants demonstrated, through corporate and personal tax documents, as well as a pending foreclosure action against Mostafa and Eskandar's personal residence, an inability to withstand a greater settlement amount. Accordingly, although Plaintiffs' unpaid wages according to Plaintiffs' calculations exceed $119,000, based on Defendants' exceedingly poor financial position, the parties agreed to settle this matter for the Settlement Sum and Penalty Payment. "Case law recognizes that potential difficulty in collecting damages militates in favor of finding a settlement reasonable." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013). In light of the Defendants' financial condition, the Settlement Agreement provides Plaintiffs with a reasonable recovery amount and should therefore be approved.

Pursuant to the Settlement Agreement, Defendants will pay the Settlement Sum in one payment within five (5) business days after Court approval of the Settlement Agreement, and Defendants will pay the Penalty Payment in one payment by April 15, 2018 or within five (5) business days of Court approval of the Settlement Agreement, whichever occurs later. To protect against default, Defendants have each executed Affidavits of Confession of Judgment to be entered in the event of default. Therefore, Plaintiffs are adequately protected.

The Settlement Agreement also contains a mutual general release, like the provision approved by this Court in *Dacaj v. Sahara East Corp., et al.*, No. 16-CV-2273, (S.D.N.Y. Jan. 20, 2017). As in that case, the Agreement here binds only the named Plaintiffs because this case is not a class action and did not proceed as a collective action. Moreover, Plaintiffs, who are represented by counsel, no longer work for Defendants and have represented that they have no knowledge of any additional potential claims that they may have against Defendants. Accordingly, "it would be an anomalous result to say that a general release is unfair given that the agreement to one amounts to zero cost . . . as there is no other claim that could be brought." *Souza v. 65 St. Marks Bistro*, No. 15-CV-327 (JLC), 2015 WL 7271747, at *6 (S.D.N.Y. Nov. 6, 2015).

The proposed Settlement Agreement resolves *bona fide* disputes over sharply contested issues regarding the hours Plaintiffs worked and was negotiated at arm's-length during a settlement conference with Your Honor. It also takes into account Defendants' claims of inability to pay a larger settlement sum. Prior to the settlement conference, the parties conducted a thorough investigation, evaluated the claims and defenses, and had discussions regarding the valuation of the case, legal precedent, and ability to pay.

Moreover, considering the early procedural posture of this case, the parties stand to incur significant costs and legal fees in pursuing litigation, and, by settling, avoid those costs and the risks of litigation. Because the Settlement Sum and Penalty Payment were negotiated at arm's length and take into account Defendants' financial limitations, the Court should approve the Settlement Agreement as fair and reasonable. *See Wolinsky*, 900 F. Supp. 2d at 335.

## ATTORNEYS' FEES

As agreed upon at the January 30, 2018 settlement conference with Your Honor, and due to Defendants' demonstrated inability to pay, Plaintiffs' counsel are foregoing attorneys' fees from the Settlement Sum. Rather, Plaintiffs' counsel seeks one-third of the Penalty Payment, totaling $3,333.33, and in the event that Miramar is sold, one-third of the sale price.

Although the retainer agreements signed by Plaintiffs provided for attorneys' fees at 33.3% of the total settlement amount after reimbursements of costs, Pechman Law Group PLLC has discounted its fee in this case in an attempt to facilitate settlement. Since the filing of the case, Plaintiffs' counsel has spent time litigating and participating in settlement negotiations with Defendants, amounting to a current lodestar of approximately $32,000 in fees, and $595.49 in disbursements. Plaintiffs' counsel has used its considerable expertise and experience to provide a satisfactory result to Plaintiffs. The allocation of $3,333.33 to Plaintiffs' counsel from the Penalty Payment and one-third (1/3) of the amount of a potential recovery of a possible sale of Miramar and/or the lease of the Miramar property to Plaintiffs' counsel for fees is a tiny fraction of the lodestar amount. Plaintiffs' counsel has worked without compensation of any kind to date and their fee has been wholly contingent upon the result achieved. Due to

Defendants' demonstrated inability to pay, and in light of the Plaintiffs' counsel's abstention from collecting a fee from the initial Settlement Sum, the Court should approve the attorneys' fees amount as fair.

## CONCLUSION

All parties agree that the Settlement Agreement is fair and reasonable and should be approved by the Court. This settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses in further litigation. Continuing through discovery and trial would consume significant amounts of time and resources and demand substantial judicial resources. A trial would be costly for all parties and could lead to the depletion of the resources used to resolve this matter. The settlement reached for Plaintiffs will not prejudice any other employee or former employee of Defendants from pursuing a claim against Defendants in the future.

We thank the Court for its time and consideration of this matter.

Respectfully submitted,

Vivianna Morales

cc: Counsel for Defendants (via ECF)

Enclosures